Filed 8/1/13  In re J.M. CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **In re J.M., a Person Coming Under the Juvenile Court Law.** | |
| **CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU,** | **A137248** |
| **Plaintiff and Respondent,** | |
| **v.** | **(Contra Costa County Super. Ct. No. J11-00061)** |
| **JAMES M. et al.,** | |
| **Defendants and Appellants.** | |

James M. (Father)[1] and Marilyn L. (Mother) appeal from the juvenile court's order terminating parental rights to J.M. (Minor) following a hearing held pursuant to Welfare and Institutions Code section 366.26.[2]  Mother claims she received inadequate notice of the possibility that her parental rights could be terminated at the hearing, and both parents contend there was an insufficient showing that Minor is adoptable.  We affirm.

BACKGROUND

In January 2011, the Contra Costa County Children & Family Services Bureau (Bureau) filed a section 300 dependency petition alleging that Minor (born in June 2006)

---

[1]   James M. is not J.M.'s biological father, but the juvenile court granted James M. presumed father status.

[2]   All undesignated section references are to the Welfare and Institutions Code.

1

is within the jurisdiction of the juvenile court. The January petition and subsequent amended petitions alleged as the bases for jurisdiction, among other things, Minor's parents' drug abuse, domestic violence in the home, and extensive sexual abuse of Minor by parents.

At the July 2011 contested jurisdictional hearing, the juvenile court sustained the allegations in the section 300 petition, as amended. At the November dispositional hearing, the court adjudged Minor a dependent of the court and denied both parents reunification services and visitation. The court also scheduled the section 366.26 permanency planning hearing.

The Bureau's report for the March 2012 section 366.26 hearing indicated Minor was healthy and developmentally on target. She was in her fourth placement, which began on November 1, 2011. The report stated that Minor is adoptable, explaining "[Minor] is a young child who has been seriously damaged by the actions of her mother and the presumed father. [Minor] has had many behaviors that show how she is processing this abuse, and trying to heal from it and form positive, healthy relationships. [Minor] is getting a lot of support in this process, and she has responded well to this support. [Minor] is a young child who has many strengths, not the least of which is her bright, engaging personality. [Minor] desires to connect and receive love, and she is eager to be a part of a family. In this respect, [Minor] is a highly adoptable child." The Bureau recommended a 180-day continuance of the hearing to provide the Bureau an opportunity to locate an adoptive home. The juvenile court continued the hearing to August 2012.

In an August 2012 addendum report, the Bureau recommended another continuance of 90 days. Minor was healthy, performing at grade level, and there were no reported behavioral problems at school or home. Minor was participating in "Intensive Therapeutic Foster Care Services" to address self-esteem and personal boundary issues, as well as symptoms of anxiety and hyper vigilance. Minor had begun overnight visits with a prospective adoptive parent in June 2012, but the prospective adoptive parent declined to proceed further because of Minor's hyperactivity, need for constant attention,

2

defiance, and tantrums.  Thereafter, Minor's behavior regressed, including in regard to "sexually acting out."  The Bureau reported that Minor's current caretakers had expressed interest in the possibility of adopting Minor, and the Bureau indicated it needed additional time to explore that possibility.

The court continued the hearing to November 28, 2012.  The Bureau's September notice to Mother regarding the hearing had a box checked indicating the recommended plan was "Long Term Foster Care."  The notice also included the following in boldface print:  "IMPORTANT NOTICE  [¶] A hearing under Welfare and Institutions Code section 366.26 has been set for the date and time below.  At the hearing the court may terminate parental rights and free the child for adoption . . . ."

In a November 1, 2012 memo, the Bureau reported Minor's foster parents had made a commitment to adopt her and "[t]he Bureau plans to recommend that parental rights be terminated at the continued 366.26 hearing on 11/28/2012."

In a third addendum report prepared for the section 366.26 hearing, filed on the day of the hearing, the Bureau stated Minor had been in the same foster home since November 1, 2011, and the foster parents had made a commitment to adopt her.  The Bureau recommended that the juvenile court find Minor adoptable and terminate parental rights.  Mother was not present at the November 28, 2012 hearing.  The parents' attorneys argued Minor was not adoptable and objected to the order terminating parental rights.  Minor's counsel agreed with the Bureau's recommendation to terminate parental rights.

The juvenile court found by clear and convincing evidence that it is likely Minor will be adopted, stating "And practically by definition [Minor] is an adoptable child. [¶] Not only because of the description of her and her disposition and her progress, in general, but also because I think there is a specific family in mind who is committed to adopting her and she's been with them for over a year now."  The court terminated parental rights.

This appeal followed.

3

DISCUSSION

I. *Mother Forfeited Her Claim Based on the Adequacy of Notice*

Mother contends the order terminating her parental rights must be reversed because she was not given notice that adoption was the Bureau's recommendation for the section 366.26 hearing.

Section 294 obligated the Bureau to give Mother notice of the section 366.26 hearing, including the nature of the proceedings, the recommendation of the supervising agency, and a statement that the court is required at the hearing to select a permanent plan of adoption, legal guardianship, or long-term foster care. (§ 294, subds. (a), (e).) In the present case, the Bureau's notice failed to inform Mother that its recommended plan was adoption. Also, the Bureau provided notice by regular mail, but Mother argues it was obligated to provide notice by certified mail, because its recommended plan was adoption. (§ 294, subd. (f)(2) & (6).)

Even assuming Mother did not receive notice comporting with section 294, she has, as the Bureau argues, forfeited her claim because she did not object on that basis below. Although Mother was not present at the November 28, 2012 hearing, she was represented by counsel at the hearing. Her counsel raised no objection based on the failure to provide Mother adequate notice. As explained by the Second District in *In re Wilford J.* (2005) 131 Cal.App.4th 742: "An appellate court ordinarily will not consider challenges based on procedural defects or erroneous rulings where an objection could have been but was not made in the trial court. [Citation.] Dependency cases are not exempt from this forfeiture doctrine. [Citations.] The purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the juvenile court so that they may be corrected. [Citation.] Although forfeiture is not automatic, and the appellate court has discretion to excuse a party's failure to properly raise an issue in a timely fashion [citation], in dependency proceedings, where the well-being of the child and stability of placement is of paramount importance, that discretion 'should be exercised rarely and only in cases presenting an important legal issue.' [Citation.]" (*Id.* at p. 754.) *In re Wilford J.* continued, "A defect in notice, as we have discussed, is a most serious issue,

4

potentially jeopardizing the integrity of the entire judicial process. However, when a parent had the opportunity to present that issue to the juvenile court and failed to do so, appellate courts routinely refuse to exercise their limited discretion to consider the matter on appeal. This is precisely because defective notice and the consequences flowing from it may easily be corrected if promptly raised in the juvenile court. [Citation.]" (*Ibid.*)

Mother's reply brief argues in passing that counsel's failure to object constituted ineffective assistance of counsel. However, assuming counsel's representation fell below an objective standard of reasonableness in that regard, there is no reasonable probability that, but for counsel's deficient performance, the result of the section 366.26 hearing would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 686-687; *People v. Williams* (1997) 16 Cal.4th 153, 215.) Although the Bureau's notice contained inaccurate information about its ultimate recommendation, Mother had actual notice of the possibility of adoption and termination of parental rights, and constructive notice through her counsel that the Bureau was seeking a plan of adoption. Nevertheless, Mother failed to attend the November 28, 2012 hearing. She has not shown she would have conducted herself differently had the Bureau provided accurate information about its recommendation in the September notice.

More fundamentally, there is no reasonable likelihood Mother could have done anything to prevent termination of parental rights, in light of the egregious history of sexual abuse of Minor and because Mother had not even had reunification services or recent visitation with Minor. Once a juvenile court finds a likelihood of adoption (see, *post*, part II.), termination of parental rights is required unless one of several specified exceptions applies. (§ 366.26, subd. (c)(1).) Mother does not contend that any of the exceptions were applicable. Counsel's failure to object on the basis of the inadequacy of the notice was harmless.[3]

---

[3]  Relying on *In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1116, Mother contends any error as to notice was structural error requiring automatic reversal. *In re Jasmine G.* is distinguishable; in that case the mother's location was unknown and there was no effort made to locate her and provide her notice of the section 366.26 hearing. (*In re Jasmine*

5

II. *The Juvenile Court's Adoptability Finding Is Supported by Substantial Evidence*

Father, joined by Mother, contends there was no clear and convincing evidence that Minor is likely to be adopted. (§ 366.26, subd. (c)(1).) We review the juvenile court's determination for substantial evidence. (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1561-1562.) "We give the court's finding of adoptability the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of affirming. [Citation.]" (*Id.*, at p. 1562.)

In the present case, the Bureau's disposition report, filed in November 2011, indicated that Minor had exhibited aggressive and sexualized behavior with other children. Minor had been through several placements before being placed with her current caretakers in November 2011, and there was an unsuccessful attempt in summer 2012 to connect Minor with a different adoptive family. Afterward, according to the Bureau's August 2012 addendum report, Minor "regressed in some areas, including the sexual acting out." Nevertheless, the same addendum stated, "There were no reported behavior problems at school or at home." Minor was in good physical health, developmentally normal, social, and doing well in school. Thus, the evidence supported an inference that Minor's emotional and behavioral problems were not so severe as to render her unadoptable.

Moreover, Minor had been with her current caretakers for over a year by the time of the section 366.26 hearing, and they had committed to adopting her. "Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor. In other

---

*G.*, at pp. 1113-1114, 1116; see also *In re J.H.* (2007) 158 Cal.App.4th 174, 183 [stating that *In re Jasmine G.* applies where "there is no attempt to serve notice on a parent"].) In any event, the California Supreme Court subsequently rejected the proposition that the type of error in the present case constitutes structural error. (*In re James F.* (2008) 42 Cal.4th 901, 918 [in dependency context, stating "[i]f the outcome of a proceeding has not been affected, denial of a right to notice and a hearing may be deemed harmless and reversal is not required"]; see also *In re A.D.* (2011) 196 Cal.App.4th 1319, 1326-1327 [declining to follow *In re Jasmine G.* in light of *In re James F.*].)

words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*. [Citation.]" (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649-1650.)

Father points out that the Bureau failed to present expert evidence supporting its claim that Minor is adoptable, but he cites no authority any such evidence is required. The juvenile court's adoptability finding is supported by substantial evidence.

## DISPOSITION

The juvenile court's orders are affirmed.

_____
SIMONS, J.

We concur.

_____
JONES, P.J.

_____
NEEDHAM, J.

7